# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHELLE RANGER | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| vs. | : | **JURY TRIAL DEMANDED** |
| WAVENY LIFECARE NETWORK, INC. | : | |
| Defendant. | : | MAY 21, 2019 |

## COMPLAINT

## JURISDICTION AND VENUE

1. This action arises under arises under Title VII of the Civil Rights Act of 1964 codified as 42 U.S.C. 2000e, et al. ("Title VII"); the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 46a-60, et seq.; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Michelle Ranger ("Plaintiff") resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

## PLAINTIFF

6. The Plaintiff, Michelle Ranger ("Plaintiff" or "Ms. Ranger"), resides in Southport, Connecticut.

## DEFENDANT

7. The Defendant, Waveny LifeCare Network, Inc. ("Defendant") is a Connecticut corporation, which operates a nursing home known as "The Village at Waveny" (the "Nursing Home") which is located at 3 Farm Road in New Canaan, Connecticut.

8. Upon information and belief, the Nursing Home employs approximately five hundred twenty (520) employees.

## FACTS

9. Plaintiff is African American (i.e. black-skinned) and Jamaican.

10. The Plaintiff's physical characteristics which places her in a protected class are readily apparent to any reasonable person who sees Plaintiff's skin or hears her readily apparent Jamaican accent.

11. Plaintiff was hired by Defendant on November 18, 2015 to work in the Nursing Home as a *per diem* licensed practical nurse ("LPN").

12. On May 23, 2016, plaintiff was made a regular, full-time LPN (32 hours-per-week plus overtime).

13. Plaintiff always performed the duties of her position in an objectively satisfactory manner.

14. Most of the nursing staff in the Nursing Home was and remains Caucasian.

15. At all times relevant, Plaintiff's immediate supervisor had been Lori Civitella, ("Civitella") (Caucasian), Registered Nurse, and Director of Resident Care.

16. On a number of occasions prior to January 2017, the Plaintiff was asked to administer reprimands and warnings to four different African American certified nurse assistants ("CNA's") on behalf of Civitella.

17. Plaintiff was never asked to reprimand any white employees.

18. Upon information and belief, the reason the Plaintiff was assigned this unpleasant task was due to her race.

19. On January 12, 2017, at approximately 8:45 p.m., an elderly patient (the "Patient") at the Nursing Home fell and suffered significant bodily injury (the "Incident") including fractured hip bones, requiring surgery.

20. On January 12, 2017, at approximately 8:45 p.m., a different LPN, named Nemia Icoy ("Icoy") was responsible for the care of the Patient and for supervising the CNA's on duty.

21. On January 12, 2017, at approximately 8:45 p.m., the plaintiff was not on duty, as her shift started at 11 p.m.

22. Icoy is not African American and is good friends with Civitella.

23. Upon information and belief, Icoy had been "blacklisted" from working at the Nursing Home in 2016, until Civitella interceded on Icoy's behalf and caused her to be hired.

24. Upon information and belief, Civitella preferred Icoy as an employee over the Plaintiff due to her race and because Icoy was not of Jamaican origin.

25. Plaintiff had no part in causing or allowing the Incident to occur.

26. When plaintiff took over duties from Icoy at 11 p.m., Icoy stated to Plaintiff that the Patient had fallen, that a physician and Civitella had been notified, and that X-Rays had been ordered for the following day.

27. Plaintiff observed the patient resting peacefully, in no apparent distress.

28. Near the end of Plaintiff's shift, sometime around 6 or 6:30 a.m. on January 13, 2017, the Patient awoke, and became belligerent, which was not unusual for this patient who had a history of Alzheimer's and elopement.

29. At this time, Plaintiff was assisting a different patient in a different section of the building who was bleeding, so Plaintiff requested assistance from a CNA in assisting the Patient.

30. Subsequently, Plaintiff observed the Patient behaving as he usually did while awake.

31. At no time, did Plaintiff observe or become aware of any fall or injury which occurred to the Patient on her shift.

32. At no time did Plaintiff, knowingly or otherwise, violate proper protocol in treating the Patient.

33. On January 13, 2017, at about 7 a.m., Icoy called in and asked to speak to a nurse on duty.

34. Upon information and belief, Icoy had a conspirator change the records to superficially make it look as though she had followed protocol when she did not.

35. A few days after the incident, Civitella aggressively approached Plaintiff, stating that the Incident was Plaintiff's fault.

36. After being accused by Civitella Plaintiff inquired as to the personal knowledge of CNA's including a CNA named Angella Mitchell (sp?) and a CNA named Farrah (sp?) and other CNA's.

37. These CNA's and other employees of defendant informed Plaintiff that when the fall occurred on January 12, 2017, at approximately 8:45 p.m., no report was written up, and the Patient was moved in violation of protocol.

38. Plaintiff immediately upon learning of this, informed Civitella of these serious breaches in Nursing Home policy, and violations of public policy and common sense.

39. Instead of disciplining the wrongdoers, only Plaintiff was disciplined as a result of the Incident.

40. On January 20, 2017, Plaintiff was summoned to a formal meeting with Civitella.

41. A Ms. Iverson and a Ms. Altieri were also in attendance at this meeting.

42. At the meeting, over Plaintiff's objections, Ms. Civitella suspended Plaintiff pending an "Investigation" as to the Incident.

43. On January 30, 2017 Ms. Ranger was sent a termination letter, attached and incorporated hereto as Exhibit A.

44. The termination letter stated that Ms. Ranger was being terminated for four violations of Defendant's policies, all directly related to the Incident.

45. The termination letter states that the Incident occurred on "1/12/2017," "during your shift."

46. The real reason Plaintiff was terminated by Defendant, via Civitella and her co-conspirators was to serve as a "fall-person" regarding the Incident and to protect their favored employee, Icoy.

47. Furthermore, by previously forcing the Plaintiff to reprimand other employees because of her race, Civitella had made the Plaintiff disliked amongst the other employees of the Nursing Home, which motivated them to engage in the cover-up blaming the Plaintiff for the Incident when it was not in any way her fault.

48. Plaintiff timely brought her claims in front of the CHRO (No. 1820002) and the EEOC (No. 16a-2017-01626).

49. On February 21, 2019 the EEOC issued a release of jurisdiction and "right-to-sue" notification to Plaintiff.

# COUNT ONE
# VIOLATION OF TITLE VII
# DISCRIMINATION BASED ON RACE

50. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-49 as if more fully set forth herein.

51. The Plaintiff, a black-skinned person of Jamaican origin, is a member of protected classifications.

52. The Plaintiff was qualified for her position.

53. Plaintiff has been treated disparately, based upon her race, including, but not limited to the following:

   (a) She was asked to discipline only black employees due to her race;

   (b) As a result of being required to discipline her co-workers due to her race, Plaintiff had little support from her co-workers when she was being scapegoated;

   (c) Civitella favored Icoy as an employee due to her race; and,

   (d) On January 30, 2017, Plaintiff was wrongfully terminated, without progressive discipline, for Icoy's mistakes, because Icoy was favored and plaintiff was disfavored on the basis of their respective race/national origin.

54. These discriminatory and adverse employment actions were taken as a result of the Plaintiff's African American race/ethnicity and Jamaican national origin.

55. As such, Defendant's actions and conduct are a violation of Title VII.

56. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

57. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO
## VIOLATION OF CONN. GEN. STAT. §46A-60b
## DISCRIMINATION BASED UPON RACE

58. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-57, as if more fully set forth herein.

59. Defendant's actions are a violation of Gen. Stat. §46a-60b.

60. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

61. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT THREE
## VIOLATION OF CONN. GEN. STAT. § 31-51Q
## RETALIATION FOR SPEECH ON MATTER OF PUBLIC CONCERN

62. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-61, as if more fully set forth herein.

63. Plaintiff reported Icoy's misconduct regarding elder abuse to her supervisor, Civitella.

64. Instead of disciplining her friend, Icoy, Civitella instead retaliated against Plaintiff.

65. Icoy's attempt to conceal the Incident was against public policy and a matter of public concern.

66. Defendant's actions are a violation of Gen. Stat. §31-51q.

67. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

68.     Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FOUR
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

69.     The Plaintiff hereby re-alleges and reincorporates paragraphs 1-68, as if more fully set forth herein.

70.     Plaintiff being terminated as scapegoat in the stead of a more preferred employee violates public policy.

71.     In particular, Defendant knowingly terminated Plaintiff based on improper act which was done by a different employee.

72.     Further, when attempting to defend this matter at the CHRO, Defendant asserted that there was a second fall which occurred on Plaintiff's shift.  This after-the-fact proactive fraudulent altering of the basic narrative was necessarily done with intent.

73.     As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

74.      Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FIVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75.     The Plaintiff hereby re-alleges and reincorporates paragraphs 1-74, as if more fully set forth herein.

76.     Defendant's actions which caused Plaintiff to be terminated as a scapegoat despite her constructive knowledge that Plaintiff did nothing wrong was extreme and outrageous.

77. Defendant knew that blaming Plaintiff for serious misconduct which she did not do would cause Plaintiff severe emotional distress.

78. Defendant intended that Plaintiff suffer severe emotional distress.

79. Plaintiff indeed suffered severe emotional distress which caused her bodily harm as a result of Defendant's conduct.

## COUNT SIX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

80. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-79, as if more fully set forth herein.

81. Defendant's actions which caused Plaintiff to be terminated as a scapegoat despite her constructive knowledge that Plaintiff did nothing wrong was extreme and outrageous.

82. Defendant knew that blaming Plaintiff for serious misconduct which she did not do could reasonably and foreseeably cause Plaintiff severe emotional distress which would result in bodily injury.

83. Plaintiff indeed suffered severe emotional distress which caused her bodily harm as a result of Defendant's conduct.

84. Plaintiff suffered migraine headaches, high blood pressure, and underwent hospitalization as a result of the defendant's acts.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

                    THE PLAINTIFF,
                    MICHELLE RANGER

By:_____/s/_____
    Eugene Axelrod (ct00309)
    Axelrod & Associates, LLC
    *Her Attorneys*
    8 Lunar Drive
    Woodbridge, CT 06525
    Tel: 203-389-6526
    Fax: 203-389-2656
    Email: eaxelrod@axelrodlegal.com